Peter J. Andrews [PA-3295]
Walker G. Harman, Jr. [WH-8044]
THE HARMAN FIRM, PC
*Counsel for Plaintiffs*
200 West 57th Street, Suite 900
New York, New York 10019
(212) 425-2600
pandrews@theharmanfirm.com
wharman@theharmanfirm.com

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------------X
AMADO S. PLA,
KEVIN JOSEPH,
YISHMAEL LEVI,
TAWANDA THOMPSON,
JOSUE MILLIEN,
TERRANCE CRAWFORD,
ROY SANGSTER,
CHARLES WESSEL,
*each individually and on behalf of*
*all other persons similarly situated,*

        *Plaintiffs,*

        *v.*

RENAISSANCE EQUITY HOLDINGS, LLC,
CLIPPER EQUITY, LLC,
MY GUARD SECURITY CORP.,
DAVID BISTRICER *individually,*
RAFAEL GARCIA *individually,*
MARC ANTHONY GARCIA *individually,* and
JOHN MURPHY *individually,*

        *Defendants.*
--------------------------------------------------------------------X

**12 CV 5268 (JMF)**

**THIRD AMENDED CLASS
AND COLLECTIVE ACTION
COMPLAINT**

## NATURE OF ACTION

1.    The eight (8) individually Named Plaintiffs allege on behalf of themselves and

other similarly situated current and former security officer employees of the Defendants who

elect to opt into this action pursuant to the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, that they are:

> (i)     Entitled to unpaid wages from Defendants for overtime work for which they did not receive overtime premium pay, as required by law; and
>
> (ii)    Entitled to liquidated damages pursuant to the FLSA.

2.      The Plaintiffs further complain on behalf of themselves, and a class of other similarly situated current and former security officer employees of the Defendants, pursuant to FED. R. CIV. P. 23, that they are entitled to back wages from the Defendants for overtime work for which they did not receive overtime premium pay as required by the N.Y. LAB. LAW §§ 650 *et seq*.

## VENUE AND JURISDICTION

3.      This Court has subject matter jurisdiction over this proceeding to 28 U.S.C. §§ 1331, 1337, and 1343.  This Court has supplemental jurisdiction over the Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.  In addition, the Court has jurisdiction over the Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

4.      Each of the Defendants maintains sufficient contacts with the Southern District of New York to make venue appropriate in this Court pursuant to 28 U.S.C. § 1391.

5.      This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

6.      Pursuant to FED. R. CIV. P. 38(b), Plaintiffs demand a trial by jury on all issues raised in this action.

## PARTIES

7.      Plaintiff AMADO S. PLA ("PLA") was, at all relevant times, an adult individual, residing in the State of New York, County of Orange.

8.      Plaintiff KEVIN JOSEPH ("JOSEPH") was, at all relevant times, an adult individual residing in the State of New York, County of Suffolk.

9.      Plaintiff YISHMAEL LEVI ("LEVI") was at all relevant times, an adult individual residing in the State of New York, County of Kings.

10.      Plaintiff TAWANDA THOMPSON ("THOMPSON") was, at all relevant times, an adult individual, residing in the State of New York, County of Kings.

11.      Plaintiff JOSUE MILLIEN ("MILLIEN") was, at all relevant times, an adult individual, residing in the State of New York, County of Kings.

12.      Plaintiff TERRANCE CRAWFORD ("CRAWFORD") was, at all relevant times, an adult individual residing in the State of New York, County of Kings.

13.      Plaintiff ROY SANGSTER ("SANGSTER") was, at all relevant times, an adult individual residing in the State of New York, County of Kings.

14.      Plaintiff CHARLES WESSEL ("WESSEL") was, at all relevant times, an adult individual residing in the State of New York, County of Richmond.

15.      Upon information and belief, CLIPPER EQUITY, LLC ("CLIPPER EQUITY"), a Defendant herein, was at all relevant times a New York State corporation with its business office at 4611 12th Avenue, Brooklyn, New York 11219.

16.      Upon information and belief, CLIPPER EQUITY is a privately owned company or partnership that owns and manages real estate in the tri-state New York City area, and was the owner of the Flatbush Gardens residential complex, which it purchased in 2005.

17.     Upon information and belief, as the owner of the complex, CLIPPER EQUITY was responsible for security at Flatbush Gardens, and was responsible for employing and managing the Plaintiffs and others as security officer personnel, and for paying them their wages.

18.     Upon information and belief, Defendants RENAISSANCE EQUITY and CLIPPER EQUITY are closely interrelated companies in that one of the individually named Defendants herein, DAVID BISTRICER, is a Principal and/or Senior Shareholder or Partner in both of these companies.

19.     Upon information and belief, under Defendant BISTRICER's direct management and control of both RENAISSANCE EQUITY and CLIPPER EQUITY, these two companies have each owned Flatbush Gardens at different points in time.

20.     Upon information and belief, Defendant MY GUARD SECURITY CORP. ("MY GUARD") is a New York State corporation with its business offices at 1370 St. Nicholas Avenue, New York, New York 10033.

21.     Upon information and belief, Defendant MY GUARD is a privately owned security company that provides security services to owners and/or operators of residential complexes, by *inter alia*, assigning security personnel to those complexes, pursuant to contractual relationships with the owners and/or operators of the complexes.

22.     Upon information and belief, Defendant JOHN MURPHY ("MURPHY") is the owner, President and Chief Executive Officer of Defendant MY GUARD.

23.     Upon information and belief, at relevant points in time, Defendant MY GUARD provided security services at Flatbush Gardens by assigning security personnel to the complex pursuant to contractual relationships between MY GUARD and the owners/operators of Flatbush Gardens, Defendants RENAISSANCE EQUITY and CLIPPER EQUITY.

24.     Upon information and belief, during relevant periods in the past, MY GUARD was responsible for employing and managing security officer personnel assigned to Flatbush Gardens, and for paying them their wages.

25.     Upon information and belief, the principal reason that Defendants RENAISSANCE EQUITY and CLIPPER EQUITY did business with Defendant MY GUARD was because it possessed a security license, which a business is required to have in order to provide security services under New York State law.

26.     Upon information and belief, neither RENAISSANCE EQUITY nor CLIPPER EQUITY ever possessed security licenses, even though security operations at Flatbush Gardens now are handled "in-house" without the participation of MY GUARD or any other security company.

27.     Upon information and belief, David BISTRICER ("BISTRICER"), an individual Defendant herein, was and is a Principal and/or Senior Partner or Shareholder in both Defendants RENAISSANCE EQUITY and CLIPPER EQUITY, which at relevant points in time were and are the owners of Flatbush Gardens.

28.     Upon information and belief, Defendant BISTRICER manages and controls both RENAISSANCE EQUITY and CLIPPER EQUITY, and through his management and control of these and other related entities, is a major property owner and real estate manager in the tri-state New York City area.

29.     Upon information and belief, RAFAEL GARCIA ("RAFAEL GARCIA"), an individual Defendant herein, has until recently, been Director of Operations and Security at Flatbush Gardens, and as such, reported directly to Defendant BISTRICER and the BISTRICER-

controlled Defendants RENAISSANCE EQUITY and CLIPPER EQUITY, including their Senior Manager, Jacob Schwimmer.

30.     Upon information and belief, Defendant BISTRICER personally, or through his senior managers, recruited and hired Defendant RAFAEL GARCIA for the position of Director of Operations and Security at Flatbush Gardens.

31.     Upon information and belief, Defendant RAFAEL GARCIA was in charge of the day-to-day operations and management of Flatbush Gardens, including the hiring, supervision, direction, evaluation and termination of security officer personnel, including the individually named Plaintiffs in this action.

32.     Upon information and belief, RAFAEL GARCIA, was either terminated or forced to resign from his position as Director of Operations in the spring of 2013, and was replaced by a new Director of Operations.

33.     Upon information and belief, Defendant RAFAEL GARCIA entered into a severance agreement when his employment ended.

34.     Upon information and belief, at all relevant times, Defendant BISTRICER visited Flatbush Gardens approximately once a week to personally inspect conditions and operations at the complex.   During these visits, Defendant BISTRICER typically met with Defendant RAFAEL GARCIA to discuss those operations and conditions.

35.     Upon information and belief, Defendant MARC ANTHONY GARCIA ("MARC ANTHONY GARCIA") is the grandson of defendant RAFAEL GARCIA, and was hired by his grandfather as Office Manager at Flatbush Gardens, with responsibility for supervising security officer personnel at Flatbush Gardens.

36.     Upon information and belief, in his capacity as Office Manager, MARC ANTHONY GARCIA reported directly to his grandfather, Defendant RAFAEL GARCIA, the Director of Operations and Security at Flatbush Gardens.

37.     Upon information and belief including the sworn deposition testimony of RAFAEL GARCIA, RENAISSANCE EQUITY HOLDINGS, LLC ("RENAISSANCE EQUITY"), a Defendant herein, was at all relevant times, a New York State corporation with its business office at 1368 New York Avenue, Suite A, Brooklyn, New York 11210.

38.     Upon information and belief, Flatbush Gardens was originally built in the 1940s, and opened as the Vanderveer Estates.  Upon information and belief, Flatbush Gardens is a rent-stabilized community consisting of fifty-nine (59) six-story (6-story) buildings located on thirty (30) acres of land.  Upon further information and belief, there are approximately two thousand four hundred sixty-nine (2,469) residential units in the complex, housing more than ten thousand (10,000) residents.

39.     Upon information and belief, RENAISSANCE EQUITY is a privately owned company or partnership that owns and manages real estate in the tri-state New York City area, including Flatbush Gardens, a large residential complex in the East Flatbush neighborhood of Brooklyn, Kings County, New York.  The business address of Flatbush Gardens is 1403 New York Avenue, Brooklyn, New York 11210.

40.     Upon information and belief, as the owner of Flatbush Gardens, RENAISSANCE EQUITY was responsible for security at the complex, and was responsible for employing and managing the Plaintiffs and others as security officer personnel, and for paying them their wages.

41.     All corporate and individual Defendants separately defined in ¶¶ 15–37 are hereinafter referred to as the "Defendants."

42.     Upon information and belief, Defendant BISTRICER acted intentionally and maliciously, and is an "employer" pursuant to the FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as the N.Y. Lab. Law § 2 and the regulations thereunder, and is thus jointly and severally liable with the various other Defendants.

43.     Defendant BISTRICER's home address is presently unknown to the Plaintiffs but as Senior Shareholder, Partner and/or Principal of both RENAISSANCE EQUITY and CLIPPER EQUITY, his business addresses are the same as the addresses of the two companies:  1368 New York Avenue, Suite A, Brooklyn, New York 11210 (RENAISSANCE EQUITY) and 4611 12th Avenue, Brooklyn, New York 11219 (CLIPPER EQUITY).

44.     Defendant RAFAEL GARCIA, on behalf of Defendants BISTRICER, RENAISSANCE EQUITY and CLIPPER EQUITY, directly controlled Plaintiffs' work schedules and conditions of employment, determined the rate and method of payment, and kept at least some records regarding their employment as security officer personnel.

45.     Upon information and belief, Defendant RAFAEL GARCIA acted intentionally and maliciously, and is an "employer" pursuant to the FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as the N.Y. Lab. Law § 2 and the regulations thereunder, and is thus jointly and severally liable with the various other Defendants.

46.     Defendant RAFAEL GARCIA's home address is 85-10 Dumont Avenue, Ozone Park, Queens, New York, 11417.

47.     Upon information and belief Defendant MARC ANTHONY GARCIA, is the grandson of former Flatbush Gardens Director of Operations and Security Defendant RAFAEL GARCIA, and was hired by his grandfather as the Office Manager at Flatbush Gardens.  Upon

information and belief, Defendant MARC ANTHONY GARCIA identified himself as a member of the "Management" of Flatbush Gardens to others, including security guards.

48.     Upon information and belief, on behalf of Defendants RENAISSANCE EQUITY, CLIPPER EQUITY, BISTRICER and RAFAEL GARCIA, Defendant MARC ANTHONY GARCIA directly controlled the Plaintiffs' work schedule and conditions of employment, including decisions to terminate employees, determined the rate and method of payment of wages, and kept at least some records regarding their employment.

49.     Upon information and belief, Defendant MARC ANTHONY GARCIA acted intentionally and maliciously, and is an "employer" pursuant to the FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as the N.Y. LAB. LAW § 2 and the regulations thereunder, and is thus jointly and severally liable with the various other Defendants.

50.     Defendant MARC ANTHONY GARCIA's home address is presently unknown to Plaintiffs but as a current or former Office Manager at Flatbush Gardens, his business address is the same as the business address of Flatbush Gardens: 1403 New York Avenue, Brooklyn, New York 11210.

51.     Upon information and belief, Defendant MURPHY is the owner, President and Chief Executive Officer of Defendant MY GUARD, which at relevant points in the past provided security services at Flatbush Gardens by assigning security personnel to work there, pursuant to contractual relationships with the owners and managers of Flatbush Gardens.

52.     Upon information and belief, at relevant points in the past, Defendant MY GUARD, and its owner, President and Chief Executive Officer Defendant MURPHY directly controlled the Plaintiffs' and other security officers' work schedules and conditions of

employment, including decisions to terminate security personnel, determined the rate and method of payment, and kept at least some records regarding their employment.

53.     Upon information and belief, Defendant MURPHY acted intentionally and maliciously, and is an "employer" pursuant to the FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as the N.Y. LAB. LAW § 2 and the regulations thereunder, and is thus jointly and severally liable with the various other Defendants.

54.     Defendant MURPHY's home address is presently unknown to Plaintiffs but as the owner, President and Chief Executive Officer of MY GUARD, his business address is the same as the business address of MY GUARD:  1370 St. Nicholas Avenue, New York, New York 10033.

## THE FLSA COLLECTIVE ACTION ALLEGATIONS

55.     Pursuant to 29 U.S.C. § 207, the Plaintiffs seek to prosecute their FLSA claims as a collective action on behalf of all persons who are or were formerly employed by Defendants RENAISSANCE EQUITY, CLIPPER EQUITY and MY GUARD as security officers at Flatbush Gardens at any time since July 5, 2006 to the entry of judgment in this case (the "Collective Action Period"), who were non-exempt employees within the meaning of the FLSA and who were not paid overtime compensation at rates not less than one and one-half times the regular rate of pay for hours works in excess of forty (40) hours per workweek  (the "Collective Action Members").

56.     This collective action class is so numerous that joinder of all members is impracticable.  Although the precise number of such persons in unknown, and the facts upon which the calculation of that number are based are presently within the sole control of the Defendants RENAISSANCE EQUITY, CLIPPER EQUITY, and MY GUARD, upon

information and belief, there are dozens of Collective Action Members during the Collective Action Period, most of whom would not be likely to file individual suits because they lack adequate financial resources, access to attorneys or knowledge of their claims.

57.    The Plaintiffs will fairly and adequately protect the interests of the Collective Action Members and have retained counsel that is experienced and competent in the fields of employment law and class action litigation.  The Plaintiffs have no interest that is contrary to or in conflict with those members of this collective action.

58.    A collective action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable.  Furthermore, inasmuch as the damages suffered by individual Collective Action Members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the members of the collective action to individually seek redress for the wrongs done to them.  There will be no difficulty in the management of this action as a collective action.

59.    Questions of law and fact common to the members of the collective action predominate over questions that may affect only individual members because the Defendants have acted on grounds generally applicable to all members.  Among the common questions of law and fact common to the Plaintiffs and other Collective Action Members are:

      (i)     Whether the Defendants employed the Collective Action Members within the meaning of the FLSA;

      (ii)    What proof of hours worked is sufficient where the employers fail in their duty to maintain time records;

      (iii)   Whether the Defendants failed to post or keep posted a notice explaining the minimum wages and overtime pay rights provided

by the FLSA in any area where the Collective Action Members are employed, in violation of C.F.R. § 516.4;

(iv)    Whether the Defendants failed to pay the Collective Action Members overtime compensation for hours worked in excess of forty (40) hours per workweek, in violation of the FLSA and the regulations promulgated thereafter;

(v)    Whether the Defendants' violations of the FLSA are willful as that term is used within the context of the FLSA;

(vi)    Whether the Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, punitive and statutory damages, interest, costs and disbursements and attorneys' fees; and,

(vii)    Whether the Defendants should be enjoined from such violations of the FLSA in the future.

60.    The Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a collective action.

## THE RULE 23 CLASS ACTION ALLEGATIONS

61.    The Plaintiffs bring this action on behalf of themselves and all other persons similarly situated pursuant to FED. R. CIV. P. 23(b)(1), (b)(2), and (b)(3).

62.    The Plaintiffs brings their N.Y. LAB. LAW claim on behalf of all persons who were employed as security officer personnel at Flatbush Gardens by Defendants RENAISSANCE EQUITY, CLIPPER EQUITY, and MY GUARD at any time since July 5, 2006, to the entry of judgment in this case (the "Class Period"), who were classified by

Defendants RENAISSANCE EQUITY, CLIPPER EQUITY and MY GUARD as exempt employees within the meaning of the N.Y. LAB. LAW and have not been paid overtime wages in violation of the N.Y. LAB. LAW (the "Class").

63.      As the members of the Class are numerous and of an unknown number, joinder of all members is impracticable.  Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of the Defendants, upon information and belief, there are dozens of members of the Class during the Class Period.

64.      The claims of the eight (8) Named Plaintiffs are typical of the claims of the Class, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  This is particularly true in the context of wage and hour litigation where individual plaintiffs, such as security officers, typically are low hourly wage employees and therefore lack the financial resources to vigorously prosecute a lawsuit in federal court against large corporate defendants and high net worth individuals such as Defendant BISTRICER, who is a major landlord and real estate operator in the tri-state New York City metropolitan area and who has been a frequent litigant over the course of many years.

65.      The Defendants have acted or have refused to act on grounds generally applicable to the Class.  Therefore, injunctive and/or declaratory relief with respect to the Class as a whole is inappropriate.

66.      The Plaintiffs are committed to pursuing this action and has retained competent counsel experienced in employment law and collective and class action litigation.

67.      The Plaintiffs have the same interests in this matter as all other members of the Class and the Plaintiffs' claims are typical of those Class members.

68.     There are common questions of law and fact affecting all members of the Class which predominate over any questions only affecting the individual members of the Class, including but not limited to:

(i)     Whether the Defendants employed the members of the Class within the meaning of the N.Y. LAB. LAW;

(ii)    Whether the security officer personnel at Flatbush Gardens were classified improperly and uniformly by the Defendants as exempt in violation of the N.Y. LAB. LAW;

(iii)   What proof of hours worked is sufficient where employers fail in their duty to maintain time records;

(iv)    Whether the Defendants failed and/or refused to pay the members of the Class premium pay for hours worked in excess of forty (40) hours per workweek within the meaning of the N.Y. LAB. LAW;

(v)     Whether the Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, punitive and statutory damages, interests, costs and disbursements and attorneys' fees; and,

(vi)    Whether the Defendants should be enjoined from such violations of the N.Y. LAB. LAW in the future.

69.     This action is maintainable as a class action under FED. R. CIV. P. 23(b)(2), since the unlawful actions of the Defendants, as alleged herein, have been taken on grounds equally applicable to all members of the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

70.     Alternatively, this action is maintainable as a class action under FED. R. CIV. P. 23(b)(1)(A), as the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the Defendants who oppose the Class.

71.     Alternatively, this action is maintainable as a class action under FED. R. CIV. P. 23(b)(3) as common questions of law and fact described above predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversies between the parties.  The members of the Class have been damaged and are entitled to recovery as a result of the Defendants' common and uniform policies, practices, and procedure that violate the N.Y. LAB. LAW.

## FACTUAL ALLEGATIONS

72.     Plaintiff PLA was employed as a security guard at Flatbush Gardens for Defendants RENAISSANCE EQUITY, CLIPPER EQUITY and MY GUARD for several years until April 2012, when he was terminated by decision of Defendant RAFAEL GARCIA.

73.     Plaintiff JOSEPH was employed as a security guard at Flatbush Gardens for Defendants RENAISSANCE EQUITY, CLIPPER EQUITY and MY GUARD for several years until April 2012, when he was terminated by decision of Defendant RAFAEL GARCIA.

74.     Plaintiff LEVI was employed as a security guard at Flatbush Gardens for Defendants RENAISSANCE EQUITY, CLIPPER EQUITY and MY GUARD for several years until April 2012, when he was terminated by decision of Defendant RAFAEL GARCIA.

75.     Plaintiff THOMPSON is employed as a security guard at Flatbush Gardens for Defendants RENAISSANCE EQUITY, CLIPPER EQUITY and MY GUARD.  She commenced employment at Flatbush Gardens on or around August 2, 2009.

76.     Plaintiff MILLIEN was employed as a security guard for the Defendants but no longer works for them.

77.     Plaintiff CRAWFORD was employed as a security guard for the Defendants but no longer works for them and was terminated at the direction of Defendant RAFAEL GARCIA.

78.     Plaintiff SANGSTER was employed as a security officer for the Defendants RENAISSANCE EQUITY, CLIPPER EQUITY and MY GUARD for several years.  He no longer works for Defendants.

79.     Plaintiff WESSEL was employed as a security guard for the Defendants, but no longer works for them.

80.     Plaintiff WESSEL, who is Caucasian, quit or resigned his job with the Defendants instead of accepting the former position of a black security guard, Plaintiff PLA, whose employment Defendant RAFAEL GARCIA had terminated.

81.     Upon information and belief, Defendant RAFAEL GARCIA is a light-skinned Hispanic individual.

82.     Upon information and belief, Defendant RAFAEL GARCIA stated to others that he "intended to change the face of security at Flatbush Gardens."

83.     Upon information and belief, it was Defendant RAFAEL GARCIA's custom and practice to replace black or dark-skinned security guards with white or Hispanic guards whenever he had the opportunity to do so.

84.     The Plaintiffs' work as security officers prior to their termination was performed in the normal course of Defendants RENAISSANCE EQUITY's, CLIPPER EQUITY's and MY GUARD's business operations and was integrated into the business of these Defendants.

85.     The work performed by the Plaintiffs required limited skill and no capital investment.  Their duties did not include managerial responsibilities or exercise of independent judgment.

86.     Plaintiffs often worked in excess of forty (40) hours a week, yet the Defendants willfully failed to pay the Plaintiffs overtime compensation of one and one-half times their regular hourly rate, in violation of the FLSA and the N.Y. LAB. LAW.

87.     Throughout Plaintiffs' tenure with Defendants RENAISSANCE EQUITY, CLIPPER EQUITY and MY GUARD, and upon information and belief, both before that time and continuing until today, the Defendants have employed other security personnel like the Plaintiffs (the Collective Action Members/the Class).  Like the Plaintiffs, these individuals also lacked the authority to hire and fire other employees, and were and are not responsible for making hiring and firing recommendations.

88.     Such individuals have worked in excess of forty (40) hours a week, yet the Defendants have likewise willfully failed to pay them overtime compensation of one and one-half times their regular hourly rate, in violation of the FLSA and the N.Y. LAB. LAW.

89.     As stated, the exact number of such individuals is presently unknown, but it is within the sole knowledge of the Defendants and can be ascertained through appropriate discovery.

90.     Throughout all relevant time periods, upon information and belief, the Defendants failed to post and to keep posted a notice explaining the minimum wage and overtime pay rights provided by the FLSA.

91.     During the course of the Plaintiffs own employment, and while the Defendants employed the Plaintiffs and the Collective Action Members/the Class, the Defendants failed to maintain accurate and sufficient time records.

92.     The Defendants knew the nonpayment of overtime would economically damage the Plaintiffs and would violate Federal and New York State labor laws.

93.     The Plaintiffs will seek leave of this Court for an Order permitting a formal notice to be sent to potential class members and to establish the opt-in procedures by authorization of the Court.

94.     The Plaintiffs will also move the Court to order the Defendants to produce the names and addresses of those who should receive the notice, namely, similarly situated current and former security personnel of Defendants RENAISSANCE EQUITY, CLIPPER EQUITY and MY GUARD.

**FIRST CAUSE OF ACTION**
**Failure to Pay Overtime under the FLSA**

95.     Plaintiffs, each on their own behalf and on behalf of each and every member of the Class, hereby reallege and incorporate each and every allegation contained in this Complaint with the same force and effect as though separately alleged and reiterated herein.

96.     At all relevant times, the Defendants have been and continue to be, employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

97.    At all relevant times, the Defendants employed, and/or continued to employ, Plaintiffs and each of the Collective Action Members within the meaning of the FLSA.

98.    Upon information and belief, at all relevant times, Defendants RENAISSANCE EQUITY, CLIPPER EQUITY and MY GUARD each had annual gross revenues in excess of five hundred thousand dollars ($500,000).

99.    The eight (8) Named Plaintiffs consent in writing to be Plaintiffs to this action, pursuant to 29 U.S.C. § 216(b).

100.    At all relevant times, the Defendants had a policy and practice of refusing to pay overtime compensation to their security officer employees for their hours worked in excess of forty (40) hours per workweek.

101.    As a result of the Defendants' willful failure to compensate its security officer employees, including the eight (8) Named Plaintiffs and the other Collective Action Members, at a rate not less than one and one-half times the regular rate of pay for work performed in excess of forty (40) hours in a workweek, the Defendants have violated, and continue to violate the FLSA.

102.    As a result of the Defendants' failure to record, report, credit and/or compensate security officers at Flatbush Gardens, including the eight (8) Named Plaintiffs and the other Collective Action Members, the Defendants have failed to make, keep and preserve records with respect to each of its employees sufficient to determine the wages, hours and other conditions and practices of employment in violation of the FLSA.

103.    The forgoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

104.    At all relevant times, the Defendants acted in reckless disregard of the applicable provisions of the FLSA and the regulations of the U.S. Department of Labor.

105.    Due to the Defendants' willful violation of the FLSA, Plaintiffs, on behalf of themselves and the other Collective Action Members, are entitled to recover from the Defendants their unpaid overtime compensation, an additional amount equal as liquidated damages, additional liquidated damages for unreasonable delayed payment of wages, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

### SECOND CAUSE OF ACTION
### Failure to Pay Overtime under the N.Y. LAB. LAW

106.    Plaintiffs, each on their own behalf and on behalf of each and every member of the Class, hereby reallege and incorporate each and every allegation contained in this Complaint with the same force and effect as though separately alleged and reiterated herein.

107.    The Defendants within the meaning of N.Y. LAB. LAW §§ 2 and 651 employed at all relevant times Plaintiffs and the other members of the Class.

108.    The Defendants willfully violated Plaintiffs' rights and the rights of the other members of the Class, by failing to pay them overtime compensation at rates not less than one and one-half times the regular rate of pay for each hour worked in excess of forty (40) hours in a workweek, in violation of the N.Y. LAB. LAW and its applicable regulations.

109.    The Defendants' N.Y. LAB. LAW violations have caused Plaintiffs and the other members of the Class irreparable harm for which there is no adequate remedy at law.

110.    Due to the Defendants' N.Y. LAB. LAW violations, the Plaintiffs and the other members of the Class are entitled to recover from the Defendants their unpaid overtime compensation, liquidated damages, damages for unreasonably delayed payment of wages,

liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to N.Y. LAB. LAW § 663(1).

## PRAYER FOR RELIEF

Wherefore, the Plaintiffs, on behalf of themselves and all other similarly situated Collective Action Members and members of the Class, respectfully request that this Court grant the following relief:

(i)   Certification of this action as a class action pursuant to FED. R. CIV. P. 23(b)(2) and (b)(3) on behalf of the members of the Class and appointing the eight (8) Named Plaintiffs and their counsel to represent the Class;

(ii)  Designation of this action as a collective action on behalf of the Collective Action Members and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, appraising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing the eight (8) Named Plaintiffs and their counsel to represent the Collective Action Members;

(iii) A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the N.Y. LAB. LAW;

(iv)  An injunction against the Defendants and their officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, as provided by law, from engaging in

each of the unlawful practices, policies, and patterns set forth herein;

(v)     An award of unpaid overtime compensation due under the FLSA and the N.Y. LAB. LAW;

(vi)    An award of liquidated damages as a result of the Defendants' willful failure to pay overtime compensation pursuant to 29 U.S.C. § 216;

(vii)   An award of punitive damages as a result of the Defendants' willful failure to pay overtime compensation pursuant to 29 U.S.C. § 216;

(viii)  An award of liquidated damages as a result of the Defendants' willful failure to pay overtime compensation pursuant to N.Y. LAB. LAW;

(ix)    An award of pre-judgment interest;

(x)     An award of post-judgment interest;

(xi)    An award of costs and expenses of this action;

(xii)   Reasonable attorneys' fees;

(xiii)  Reasonable expert fees; and

(xiv)   Further relief as may be judged as equitable, just, and proper.

Dated: New York, New York
       June 18, 2013

Respectfully submitted by:
THE HARMAN FIRM, PC
*Counsel for Plaintiffs*

Peter J. Andrews [PA-3295]
Walker G. Harman, Jr. [WH-8044]
200 West 57th Street, Suite 900
New York, New York 10019
(212) 425-2600
pandrews@theharmanfirm.com
wharman@theharmanfirm.com

To:   Joshua A. Marcus, Esq.
      Franklin Gringer & Cohen, PC
      *Counsel for Defendants*
      666 Old Country Road, Suite 202
      Garden City, New York 11530
      (516) 228-3131
      jmarcus@franklingringer.com